**ATLANTIC & GULF STEVEDORES, INC., a Maryland Corporation, et al., Plaintiffs-Appellants,**

v.

**Odell KOMINERS et al., Defendants-Appellees.**

**No. 248, Docket 71-1776.**

United States Court of Appeals, Second Circuit.

Argued Dec. 1, 1971.

Decided March 13, 1972.

William Kimball, New York City (Joseph F. McGoldrick, New York City, on the brief), for plaintiffs-appellants.

Howard McCormack, New York City (Zock, Petrie, Sheneman & Reid, New York City, on the brief), for defendants-appellees.

1. International Terminal Operating Co., Inc., also a plaintiff in the previous action, is not a party to this litigation.

2. Kominers accepted the settlement from Herlofson for transferral to the steve-

Before LUMBARD, WATERMAN and FEINBERG, Circuit Judges.

LUMBARD, Circuit Judge:

Appellants herein, three stevedore companies, were among the plaintiffs [1] in an action commenced on June 21, 1967, in the Eastern District of New York against Sigurd Herlofson & Co. A/S to recover stevedore charges for services rendered. They were represented by appellees herein, the Washington, D. C. law partnership of Kominers, Fort, Schlefer, Farmer & Boyers (Kominers). The stevedores brought the present action to recover $19,700 in disputed legal fees [2] and the lawyers counterclaimed for $10,000 paid by them to McHugh & Leonard, a New York City law firm which acted as local counsel for the stevedores in the suit against Herlofson. The district court granted Kominers' motion for summary judgment, holding not only that it was entitled to the $19,700 but also that the bill presented by McHugh & Leonard was for the account of the stevedores. We reverse the former and affirm the latter.

The stevedores had sought $1,303,-267.62 from Herlofson, but settled in May 1969 for approximately fifty-eight percent or $755,000.00. On April 9, 1968, however, some ten months after litigation had been initiated, attorney Mark Schlefer had written to the plaintiffs suggesting a change from time-plus-costs compensation to a contingency fee arrangement. The inartfully drawn proposal was accepted by the various stevedore companies. It read in relevant part:

Let me now turn to alternative fee arrangements which would be agreeable to us. We would be prepared to convert our billing to date into a retainer on account in connection with a contingency agreement. The contin-

dores, and withheld the full amount it claimed in fees. The amount in dispute is presently in escrow pending determination of this litigation.

gency would be that *if we prevailed by way of settlement before litigation, 7% of the recovery; if we recover on motion for summary judgment, 10%; if we recover after trial, 15%; if either after summary judgment or trial we must pursue or defend an appeal, 5% additional.* I am reasonably certain that this case does not have implications which the Supreme Court would consider reviewing and we would include a petition for certiorari to the Court as part of the appeal for purposes of the contingency. If by some chance the Supreme Court should grant certiorari, remote as that may be, I think we should work out a further arrangement at that time. Out of pocket disbursements would of course be for your account under the code of ethics. (emphasis added)

Some two months later Kominers filed a brief and then a reply brief in connection with the stevedores' motion for summary judgment against Herlofson. The settlement of May 1969 was reached before a decision on the motion was ever rendered.[3] Believing that they had satisfactorily completed all the work necessary to a disposition by summary judgment, the law firm claimed 10% of the settlement figure. The stevedore-plaintiffs herein,[4] on the other hand, reasoned that the settlement obviated the risk that Herlofson would ultimately prevail, in which case Kominers would get practically nothing, and that in any event summary judgment was never rendered, making 7% the appropriate recompense to the lawyers. At this time the fee owing McHugh & Leonard also fell into dispute.

The stevedores remark upon the apparently unique usage of "litigation," and deduce that a recovery "before litigation" signified a recovery without exposure to the vicissitudes of any form of legal decision-making (trial or summary judgment). Any other interpretation, they argue, might indicate that the lawyers, having drawn the agreement, were not altogether in good faith, as they were certainly aware that "litigation" in the normal sense had already begun. Furthermore, say the stevedores, the language should be strictly construed against the lawyers.

Kominers prepared and filed a 41-page memorandum of law in support of the motion for summary judgment, and thereafter a 47-page reply memorandum. This, they urge, surely makes 10% the appropriate figure inasmuch as all the work necessary to summary judgment had been performed. To "recover" on summary judgment does not indicate that the recovery must be court-ordered, according to Kominers, because the agreement also used the word "recover" in reference to settlement. Kominers also points out that Herlofson agreed to settle with the stevedores only after Kominers had prepared the summary judgment briefs, implying, perhaps accurately, that but for Kominers' efforts Herlofson might well not have perceived the need to settle.[5] The 7% figure applicable to a recovery "before litigation" is inappropriate in Kominers' view because "litigation," defined as actual court skirmishes (e. g., motions for and against summary judgment) rather than the filing of the complaint, had occurred by the time recovery was had.

Kominers further points to the April 1, 1969 letter of Mr. Schlefer to the stevedores in which he recommended that Herlofson's offer of settlement be accepted and presented a breakdown of the respective income from the recovery each plaintiff would enjoy and the respective expenses—with Kominers' fee

---

3. The district court was requested to withhold decision while settlement negotiations were explored.

4. International Terminal Operating Co., Inc., has agreed to pay Kominers 10%, a fact which does not preclude the other stevedores from asserting that their understanding was different.

5. An equally plausible inference, of course, is that the legal briefs of Herlofson's counsel impressed upon Kominers and the stevedores the wisdom of relinquishing more than 40% of their claim.

set at 10%—as well. Kominers argues that the stevedores accepted the advice contained in the letter and, insofar as no objection was made at that time, should be assumed also to have agreed to the 10% fee. Kominers finally urges that 10% is appropriate as a matter of *quantum meruit*.

 We think that 7% is the proper share of Kominers. Nothing in the record leads us to question either the good faith of the lawyers or their proficiency in representing the stevedores, but Kominers drafted the terms of the agreement and should be responsible for any defects of clarity therein. Lawyers are engaged largely for their skills as communicators, and lucidity is no less necessary in an agreement regarding fees than in other documents prepared for clients. The client invests considerable trust and money in the lawyer's ability to express himself precisely. The lawyer invites this reliance and is properly held accountable when his own imprecision in defining his fees reasonably leads to diverse interpretations. In short, lawyers are supposed to be wordsmiths; stevedores are not.

The fee of McHugh & Leonard, however, was properly held to be for the account of the stevedores. In the letter of April 1, 1969, in which Mr. Schlefer set out the recovery and expenses of the companies, the McHugh & Leonard fee was split among the stevedores three ways, one-third to Marra Brothers, one-third to International Terminal Operating Company (not a party to this litigation), and one-third to the two Atlantic & Gulf Companies. In addition, the letter of April 9, 1968, proposing the new fee arrangement, contained the following:

> Finally, I have ascertained McHugh & Leonard's fee and have made a review of the time charges which I indicated to you were applicable for last year's work. McHugh's fee to date is $2,500.

We think that the plain import of these letters and the complete lack of objection thereto removes any doubt that the New York counsel fees were for the stevedores. We hold, however, that the responsibility for the $10,000 is not joint and several. This should be divided three ways as indicated in the letter of April 1, 1969.

Reversed and remanded for entry of judgment in accordance with this opinion.